UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINA BOBBIN, in her
capacity as Plenary Guardian
of Carlo Daniel Laudadio, an
incapacitated adult,

       Plaintiff,

v.                   Case No: 2:14-cv-158-FtM-29DNF

CORIZON HEALTH, INC.,
NATALIA SAUNDERS-ROBERTS,
RN, JANICE STEPNOSKI,
L.C.S.W., WALTER CARL
MORRIS, RN, SCOTT HERBERT
KENNEDY, NOEL DOMINGUEZ,
ANDREW PAUL SAFRON, SVOBODA
MARIA HOLT, KAREN LOUISE
DELACEY, JANET JOAN MEMOLI,
MIKE SCOTT, in his official
capacity as Lee County
Sheriff, PAUL A. PAVESE, and
RODNEY K. PAYNE,
individually,

       Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of the following

motions to dismiss: (1) defendants Corizon Health, Inc., Scott H.

Kennedy, M.D., Janet J. Memoli, Natalia Saunders-Roberts, Andrew

P. Safron, III, D.O., Janice L. Stepnoski, Karen K. Delacey, and

Walter C. Morris' Motion to Dismiss Plaintiff's First Amended

Complaint (Doc. #12), to which plaintiff filed a Response in

Opposition to Medical Defendants' Motion to Dismiss (Doc. #17),

and defendants filed a Reply (Doc. #32); (2) Noel Dominguez, M.D.'s Motion to Dismiss (Doc. #22), to which plaintiff filed a Response (Doc. #35); (3) Svoboda Maria Holt's Motion to Dismiss (Doc. #24, to which plaintiff filed a Response (Doc. #36); and (4) Defendants Mike Scott, Paul A. Pavese, and Rodney K. Payne's Motion to Dismiss (Doc. #38), to which plaintiff filed a Response (Doc. #42).

**I.**

The following is a summary of the facts set forth in the First Amended Complaint (Doc. #2), which are presumed correct at this stage of the proceedings:  On October 14, 2011, Carlo Daniel Laudadio (Laudadio) was arrested for a violation of probation and booked into the Lee County Jail.  (Doc. #2, ¶ 38.)  During the booking process, Corizon Health, Inc. (Corizon), the contractor responsible for psychiatric and medical services at the Lee County Jail, obtained Laudadio's medical and psychiatric history.  The information garnered during the screening process revealed that Laudadio had received medical and psychiatric treatment during prior internments at the Lee County Jail and was recently prescribed psychotropic medications after he was Baker Acted for making suicidal threats.  (Id. ¶¶ 39-41.)  Once booking was complete, Laudadio was placed on direct observation (suicide watch) and referred for a mental health screening.  No psychotropic medications were prescribed.  (Id. ¶ 42.)

On October 16, 2011, Janice Stepnoski (Stepnoski), the mental health director at the Lee County Jail, released Laudadio to the infirmary.  (Id. ¶ 43.)  Laudadio was not seen by the staff psychiatrist or provided with any psychotropic medications prior to his release from observation, even though the medical staff knew of Laudadio's suicidal inclinations due to the presence of severe self-inflicted wounds and scars and his mental health diagnosis of major depressive disorder, recurrent anxiety disorder, impulse control disorder, polysubstance dependence, personality disorder, narcissistic and antisocial personality traits.  (Id. ¶ 44.)  Upon his arrival at the infirmary, Laudadio expressed ideations of self-harm to the screener, Janet Memoli (Memoli), a registered nurse at the Lee County Jail.  Memoli failed to contact mental health, the medical director, or the staff psychiatrist about the threats of self-harm, and failed to return Laudadio to suicide watch.  (Id. ¶ 45.)  Mental health never followed up on Laudadio's condition while he was in the infirmary, despite recognition of the need to do so, and Laudadio was never provided with any psychotropic medication.  (Id. ¶¶ 46-47.)

On October 19, 2011, Laudadio was sent to the infirmary showers in advance of his re-location to the general population.  (Id. ¶ 49.)  During the shower, Laudadio became increasingly agitated and refused to come out when requested to do so by Deputy Rodney Payne (Deputy Payne).  As a result of Laudadio's

3

noncompliance, Deputy Payne administered pepper spray before contacting a supervisor, the medical staff, or mental health. (Id. ¶ 50.) Deputy Payne subsequently contacted supervisor Sergeant Paul Pavese (Sergeant Pavese), and Laudadio was visually observed by Carl Morris (Morris), a registered nurse at the Lee County Jail. Morris "medically cleared" Laudadio, but did not conduct a proper medical clearance or examination, or contact mental health, the medical director, or the staff psychiatrist. (Id. ¶ 51.) Laudadio was subsequently instructed to return to the shower, without supervision, to decontaminate.  While in the shower, Laudadio hung himself with his jumpsuit, where he remained hanging until he was discovered by Sergeant Pavese. (Id. ¶ 53.) As a result of the incident, Laudadio's brain was deprived of oxygen for a sufficient time to result in anoxic brain injury, which has rendered him wholly dependent upon the care of others. (Id. ¶ 54.)

Plaintiff Christina Bobbin (plaintiff), Laudadio's biological sister, was appointed plenary guardian of the person and property of Laudadio and obtained a Court Order authorizing her to file a lawsuit on his behalf. (Doc. #2-1; Doc. #2-2.) Plaintiff's First Amended Complaint (Doc. #2) asserts sixteen counts alleging claims for medical malpractice, neglect of a vulnerable adult, negligence, assault and battery, and violations of Laudadio's civil rights.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being

facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).   Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

### III.

The Court will first address the motions filed by Corizon, Kennedy, Memoli, Saunders-Roberts, Safron, Stepnoski, Delacey, and Morris (Doc. #12), Dominguez (Doc. #22), and Holt (Doc. #24).

**A.    Counts Against Saunders-Roberts, Kennedy, Dominguez, Safron, Holt, and Delacey**

The Court finds that the claims asserted against Saunders-Roberts, Kennedy, Dominguez, Safron, Holt, and Delacey are inadequately pled.   Plaintiff alleges that the aforementioned defendants were employed by Corizon and were acting within the course and scope of that employment at all relevant times (Doc. #2, ¶¶ 24, 26), states the capacity in which each defendant was employed by Corizon (<u>Id.</u> ¶¶ 27-35), and collectively identifies them (and other defendants) as the "Health Care Defendants" (<u>Id.</u> ¶ 26).   Plaintiff alleges that "each Defendant" deprived Laudadio of his rights and caused the unlawful conduct.   (<u>Id.</u> ¶¶ 36-37.) The section titled "Facts Giving Rise to the Claims" does not mention any of these defendants by name, but refers to "Health

Care Defendants," "Staff," or "mental health." Nor does it suggest that they were personally aware of Laudadio's incarceration at the Lee County Jail. (<u>Id.</u> ¶¶ 38-54.) Further, the allegations in the enumerated counts against these individual defendants (Counts III, IV, V, VI, and IX) are merely conclusory. For example, Count III of the First Amended Complaint alleges that Holt and Saunders-Roberts were negligent in that they owed a duty of care to Laudadio to ensure that his mental health needs were attended to during his incarceration at the Lee County Jail, and breached that duty by failing to ensure that his mental health care needs were met. (Doc. #2, ¶¶ 71-72.) No facts relating to these particular defendants are set forth. The remaining counts against these defendants are comprised of similar conclusory allegations.

Because conclusory allegations are not entitled to a presumption of truthfulness, the Court is unable to "draw the reasonable inference that the [defendants are] liable for the misconduct alleged." <u>Speaker v. United States Dep't of Human Servs. Ctrs. For Disease Control & Prevention</u>, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 678). Accordingly, Counts III, IV, V, VI, and IX of the First Amended Complaint are dismissed without prejudice as to Saunders-Roberts, Kennedy, Dominguez, Safron, Holt, and Delacey.

B.    **Negligence Claims Against Corizon: Counts I and VII**

The First Amended Complaint asserts two claims against Corizon that sound in negligence.  Count I alleges a claim for medical negligence, and Count VII alleges a claim for negligent hiring, training, supervision, and retention.  Corizon asserts that Count VII should be dismissed as redundant of Count I.

Count I asserts a claim of "medical negligence" against Corizon based upon direct liability and upon vicarious liability for the acts of its agents, servants, and employees committed during the course and scope of their employment.  Specifically, Count I alleges that defendants Stepnowski, Morris, Kennedy, Dominguez, Safron, Holt, Delacey, and Memoli were each an agent, servant, or employee of Corizon acting with the course and scope of their employment when they provided health care services to Laudadio while he was in the Lee County Jail; that Corizon and its employees owed a duty of care to Laudadio; and that Corizon and its employees breached the duty, causing injury to Laudadio. Florida law defines a "'[c]laim for medical negligence' or 'claim for medical malpractice' [as] a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a).  Count I clearly states a claim for medical negligence based upon the direct liability of Corizon or based upon vicarious liability for acts of its employees.

Count VII, on the other hand, is a claim against Corizon for negligent hiring, training, supervision and retention.  Count VII asserts that defendants Stepnowski, Morris, Kennedy, Dominguez, Safron, Holt, Delacey, and Memoli were incompetent in the performance of their respective jobs and responsibilities within the course and scope of their employment and/or otherwise had "negligent dispositions" in the performance of their jobs and responsibilities.  Count VII alleges that Corizon knew or reasonably should have known of the incompetence or negligent dispositions of each employee based upon their employment histories with Corizon and their propensity to act negligently and/or recklessly, and should have further investigated the competence of each employee.  This negligence by Corizon is alleged to be the direct and proximate cause of injuries to Laudadio. (Doc. #2, ¶¶ 94-101.)  Count VII is not a claim for medical negligence, but an "ordinary" negligence claim.  See Buck v. Columbia Hosp. Corp. of South Broward,  So. 3d  , 2014 WL 4426480 (Fla. 4th DCA 2014) (collecting cases comparing medical negligence and ordinary negligence in medical context).

While Count I and Count VII are not redundant, Count VII is not properly pled.  Under Florida law, a claim for negligent hiring, retention, or supervision requires the actions of the employee to be committed outside the scope and course of employment.  City of Boynton Beach v. Weiss, 120 So. 3d 606, 610

(Fla. 4th DCA 2013); Magill v. Bartlett Towing, Inc., 35 So. 3d 1017, 1020 (Fla. 5th DCA 2010) (citing Garcia v. Duffy, 492 So. 2d 435, 438 (Fla. 2d DCA 1986)).   In this matter, plaintiff unambiguously alleges that all the employees were acting within the course and scope of their employment with Corizon at all relevant times.   (Doc. #2, ¶ 24.)   Thus, this negligence claim fails as a matter of law.   Weiss, 120 So. 3d at 610.   Additionally, no facts relating to the hiring of any defendant are set forth in the First Amended Complaint.   Magil, 35 So. 3d at 1020 n.1. Therefore, Count VII is dismissed without prejudice.

**C.   Adult Protective Services Act Claims Against Corizon, Stepnoski, Memoli, and Morris: Counts II, IV, and VI**

Plaintiff alleges that Corizon, Stepnoski, Memoli, and Morris neglected Laudadio, a vulnerable adult, because they failed to provide the care, supervision, and services necessary to maintain Laudadio's physical and mental health.   (Doc. #2, ¶¶ 63-69, 71-73, 87-92.)   Defendants asserts that Counts II, IV, and VI should be dismissed because plaintiff has failed to plausibly allege that Laudadio was a vulnerable adult during his incarceration at the Lee County Jail.   The Court disagrees with defendants.

The Florida legislature enacted the Adult Protective Services Act to protect "vulnerable adults" from "abuse, neglect, and exploitation" by "caregivers."   Bohannon v. Shands Teaching Hosp. & Clinics, Inc., 983 So. 2d 717, 718 (Fla. 1st DCA 2008).   The Act

provides that "[a] vulnerable adult who has been abused, neglected, or exploited . . . may recover actual and punitive damages for such abuse, neglect, or exploitation." Fla. Stat. § 415.1111. A "vulnerable adult" is defined as "a person 18 years or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(27).

According to the allegations in the Complaint, defendants knew of Laudadio's suicidal tendencies due to his mental health diagnosis of major depressive disorder, recurrent anxiety disorder, impulse control disorder, polysubstance dependence, personality disorder, narcissistic and antisocial personality traits, and the presence of severe self-inflicted wounds and scars. (Doc. #2, ¶ 44.) Plaintiff also alleges that defendants knew Laudadio was Baker Acted approximately thirty days before his incarceration due to threats of suicide and was prescribed psychotropic medications to treat his condition. (Id. ¶¶ 41-44.) The Court finds that these factual allegations plausibly suggest that Laudadio was a vulnerable adult at the time of his incarceration.

Corizon also argues that it does not qualify as a caregiver because the term only applies to "persons." Plaintiff alleges

that Corizon was hired to provide psychiatric and medical services
to inmates, such as Laudadio, and assumed responsibility of
Laudadio, on a temporary basis, at the time of his incarceration.
(Id. ¶¶ 25, 66.)

A "caregiver," as defined by the Florida Adult Protective
Services Act, is:

> a person who has been entrusted with or has assumed the
> responsibility for frequent and regular care of or
> services to a vulnerable adult on a temporary or
> permanent basis and who has a commitment, agreement, or
> understanding with that person or that person's guardian
> that a caregiver role exists. "Caregiver" includes, but
> is not limited to, relatives, household members,
> guardians, neighbors, and employees and volunteers of
> facilities as defined in subsection (9). For the purpose
> of departmental investigative jurisdiction, the term
> "caregiver" does not include law enforcement officers or
> employees of municipal or county detention facilities or
> the Department of Corrections while acting in an
> official capacity.

Fla. Stat. § 415.102(5). Florida law provides that an entity may
qualify as a caregiver if it provides care for a vulnerable adult,
and may be liable under § 415.1111 if its agents or employees abuse
or neglect the vulnerable adult. Tenet S. Fla. Health Sys. v.
Jackson, 991 So. 2d 396, 399 (Fla. 3d DCA 2008); Bohannon, 983 So.
2d at 721. Because plaintiff alleged that Corizon assumed
responsibility of Laudadio, the Court finds that the First Amended
Complaint plausibly states that Corizon was a caregiver. See
Comeau v. Volusia Cnty., No. 6:09-cv-1907-Orl-28KRS, 2010 WL
2293291, at *5 (M.D. Fla. June 7, 2010) (finding that the plaintiff

adequately alleged that Prison Health Services qualified as caregiver).

Stepnoski, Memoli, and Morris also argue that plaintiff has failed to plausibly allege that they were caregivers.  Plaintiff alleges that defendants assumed responsibility for the frequent and regular care of Laudadio during his incarceration at the Lee County Jail and had a commitment or understanding with Laudadio that a caregiver role existed.  (Doc. #2, ¶¶ 77-78.)  The Court finds these allegations to be sufficient to plausibly state a claim.

Finally, defendants argue that a claim for neglect of a vulnerable adult is not a substitute for a medical malpractice claim.  In Bohannon, the court held that Chapter 415 "was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence."  Bohannon, 983 So. 2d at 721. "The question in determining if a claim is a medical malpractice claim is whether the plaintiff must rely upon the medical negligence standard of care, as set forth in [Fla. Stat. § 766.102(1)], to prove the case."  Tenet S. Fla. Health Sys. v. Jackson, 991 So. 2d at 399.  Section 766.102(1) states that a plaintiff must "prov[e] by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider."  Fla. Stat. § 766.102(1).  Because plaintiff may

establish a claim for neglect of a vulnerable adult without relying on the medical negligence standard of care, defendants' motion to dismiss Counts II, IV, and VI is denied.  See Comeau, 2010 WL 2293291, at *5.

D.    **Medical Negligence Claims Against Stepnoski, Memoli and Morris:  Counts III and V**

Counts III and V assert claims for medical negligence against Stepnoski, Memoli, and Morris.  A plaintiff wishing to pursue a claim for medical negligence under Florida law must comply with the presuit investigation requirements set forth in Fla. Stat. § 766.203(2) and provide notice to each defendant of intent to initiate litigation for medical negligence.  Fla. Stat. § 766.106(2).  Defendants assert that Counts III and V should be dismissed because plaintiff has failed to allege that the condition precedent was satisfied.

Rule 9(c) of the Federal Rules of Civil Procedure provides that a plaintiff may generally allege that all conditions precedent have occurred.  Fed. R. Civ. P. 9(c).  Here, plaintiff alleges that she "has complied with all conditions precedent to the filing of this action . . . ."  (Doc. #2, ¶ 14.)  The Court finds this to be sufficient.  If defendants wish to challenge the adequacy of the notice, they must do so with particularity.  Fed. R. Civ. P. 9(c).

E.    § 1983 Claims Against Corizon, Stepnowski, Memoli:  Counts IX
      - XII

Corizon, Stepnoski, Memoli, and Morris assert that the claims
brought under 42 U.S.C. § 1983 (Counts IX - XII) are an
incomprehensible jumble and should be re-pled with more clarity.
After reviewing the claims, the Court finds that allegations, while
not exemplary, provide defendants with fair notice as to the nature
of the claims and the grounds upon which they rest.  Accordingly,
defendants' motion to dismiss Counts IX - XII is denied.

IV.

The Court now turns to the motion to dismiss filed by Sheriff
Scott, Deputy Payne, and Sergeant Pavese.  (Doc. #38.)

A.    Eighth Amendment Violations

In paragraph 1 of the First Amended Complaint, plaintiff
asserts she seeks relief for violations of the Eighth Amendment.
Sheriff Scott, Sergeant Pavese, and Deputy Payne assert that
plaintiff's claims are governed by the Fourteenth Amendment, not
the Eighth Amendment, because Laudadio was a pre-trial detainee.
Plaintiff agrees.  Accordingly, the First Amended Complaint is
dismissed to the extent it seeks to state a claim for violation of
the Eighth Amendment.

B.    Assault and Battery:  Count XIII

In Count XIII, plaintiff brings a state law claim for assault
and battery against Sheriff Scott, in his official capacity, and

Deputy Payne.   Sheriff Scott and Deputy Payne argue that an individual capacity claim against Deputy Payne and an official capacity claim against Sheriff Scott are mutually exclusive and cannot be alleged in a single count pursuant to Fla. Stat. § 768.28(9)(a).

Under Florida law, a municipality "shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  In McGee v. Volusia County, the Florida Supreme Court held that "[i]n any given situation either the [police] agency can be held liable under Florida law, or the employee, but not both."  679 So. 2d 729, 733 (Fla. 1996).  Acts "that can be described as abuses of lawful power" are within the scope of an officer's employment unless they "are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess . . . or if there is not even a pretense of lawful right in the performance of the acts."  Id.  The question as to whether the officer acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property is one for the finder of fact.  Id.

Plaintiff acknowledges that she can only prevail against one of the defendants named in Count XIII, but asserts that dismissal is not warranted because the claim is pled in the alternative. While a party may plead alternative theories of relief in a single count, Fed. R. Civ. P. 8(d)(2), plaintiff has failed to do so. In order to state a claim against Deputy Payne, plaintiff must allege that he acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights. Because the First Amended Complaint contains no such allegation, Count XIII is dismissed without prejudice as to Deputy Payne.

**C.   Negligent Hiring, Retention, Supervision:  Count XIV**

In Count XIV, plaintiff alleges that Sheriff Scott was negligent in the hiring, retention, and supervision of Deputy Payne, Sergeant Pavese, Stepnoski, Morris, and Memoli. As discussed earlier in connection with Corizon, a negligent hiring, retention, or supervision claim is allowed against an employer for acts of an employee committed outside the scope and course of employment. Magill, 35 So. 3d at 1020. Plaintiff has failed to allege that Stepnoski, Memoli, and Morris were acting outside the scope and course of their employment. The same is true for Deputy Payne and Sergeant Pavese. (Doc. #2, ¶ 23.) Accordingly, Count XIV is dismissed without prejudice for failure to state a claim upon which relief may be granted.

**D.   Negligent Hiring, Retention, Supervision:   Count XV**

Count XV of the First Amended Complaint asserts that Sheriff Scott negligently hired, retained, and supervised Corizon. Sheriff Scott asserts that Count XV should be dismissed because Corizon is an independent contractor, not an employee.

As a general rule, "the employer of an independent contractor is not liable for the negligence of the independent contractor because the employer has no control over the manner in which the work is done." Suarez v. Gonzalez, 820 So. 2d 342, 344 (Fla. 4th DCA 2002). The rule, however, is "riddled with exceptions." Id. For instance, a party may be liable: (1) under an actual or apparent agency theory; (2) for negligent selection or retention; or (3) when the contractor is performing non-delegable duties. See Wax v. Tenet Health Sys. Hosps., Inc., 955 So. 2d 1, 8 (Fla. 4th DCA 2007). Because plaintiff's claim is plausibly alleged to fall within at least one of the exceptions, dismissal is not warranted.

**E.   § 1983 Punitive Damages**

Counts VII, IX, X, XI, XII, XIII, XIV, and XV of the First Amended Complaint assert claims for punitive damages against Sheriff Scott in his official capacity. Sheriff Scott argues that these claims should be dismissed. The Court agrees.

In Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), the Supreme Court held that a municipality is immune from punitive

damages under § 1983.  Id. at 271.  Because a § 1983 action "against a governmental official in his *official capacity* is deemed a suit against the entity that he represents," such officials are immune from punitive damages.  Ludaway v. City of Jacksonville, 245 F. App'x 949, 951 (11th Cir. 2007) (quoting Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999)).  The Eleventh Circuit has held that the Supreme Court's reasoning in Newport extends to a Florida Sheriff's Department, thus barring a punitive damages claim against a Sheriff in his official capacity.  Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995).

Based on the foregoing, the Court finds that Sheriff Scott is immune from punitive damages because he is being sued in his official capacity.  The Court will therefore strike the requests for punitive damages in Counts VII, IX, X, XI, XII, XIII, XIV, and XV of the First Amended Complaint.

**F.   Attorneys' Fees**

Sheriff Scott asks this Court to strike the requests for attorneys' fees in Counts XIV and XV.  Plaintiff is not opposed to this request.  The requests for attorneys' fees in Counts XIV and XV are therefore stricken.

Accordingly, it is now

**ORDERED:**

1.   Defendant's Corizon Health, Inc., Scott H. Kennedy, M.D., Janet J. Memoli, Natalia Saunders-Roberts, Andrew P. Safron,

III, D.O., Janice L. Stepnoski, Karen K. Delacey and Walter C. Morris' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #12) is **GRANTED in part and DENIED in part** as follows:

    a.   The First Amended Complaint is **dismissed without prejudice** as to Kennedy, Saunders-Roberts, Safron, and Delacey.

    b.   Count VII of the First Amended Complaint is **dismissed without prejudice**. The motion is otherwise denied.

    2.   Defendant Noel Dominguez, M.D.'s Motion to Dismiss (Doc. #22) is **GRANTED.** The First Amended Complaint is **dismissed without prejudice** as to Dominguez.

    3.   Defendant Svoboda Maria Holt's Motion to Dismiss (Doc. #24) is **GRANTED.** The First Amended Complaint is **dismissed without prejudice** as to Holt.

    4.   Defendants Mike Scott, Paul A. Pavese, and Rodney K. Payne's Motion to Dismiss (Doc. #38) is **GRANTED in part and DENIED in part** as follows:

    a.   The First Amended Complaint is **dismissed** to the extent it seeks to state a claim for violation of the Eighth Amendment.

    b.   Count XIII of the First Amended Complaint is **dismissed without prejudice** as to Deputy Payne.

    c.   Count XIV of the First Amended Complaint is **dismissed without prejudice.**

d.    The requests for punitive damages in Counts VII, IX, X, XI, XII, XIII, XIV, and XV of the First Amended Complaint are **STRICKEN**.

e.    The requests for attorneys' fees in Counts XIV and XV of the First Amended Complaint are **STRICKEN**.    The motion is otherwise denied.

5.    Plaintiff may file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___29th___ day of October, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record